Margaret AUGER, Relator,

v.

GILLETTE COMPANY, Respondent,

Commissioner of the Minnesota Department of Economic Security, Respondent.

Lynn WICKENHOUSER, Relator,

v.

GILLETTE COMPANY, Respondent,

Commissioner, Minnesota Department of Economic Security, Respondent.

Nos. 50998, 51005.

Supreme Court of Minnesota.

Feb. 27, 1981.

Margaret A. Auger, pro se.

Lynn C. Wickenhouser, pro se.

Warren Spannaus, Atty. Gen., and William G. Brown, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Carol A. Ellingson, St. Paul, for Gillette Co.

## OPINION

SIMONETT, Justice.

Employees, Lynn Wickenhouser and Margaret Auger, were terminated from their employment for an incident of sleeping on the job. Both were denied unemployment compensation benefits by the Commissioner, Department of Economic Security. The issue on appeal is whether, in these circumstances, sleeping on the job constituted misconduct. Minn.Stat. § 268.09, subd. 1(2) (1980).

Both Wickenhouser and Auger were night janitors for the Gillette Company. Their job was to sweep the cafeteria and production line floors of the building. The building was large and the employees usually worked without supervision. A failure to

sweep floors was difficult to detect, since the production lines were running most of the time and the need for sweeping varied from night to night.

After complaints from other workers, Plant Services Supervisor Keith Ewy paid a surprise visit on the employees at 2:30 one morning. He discovered both sleeping in the locker room. They were lying on the floor on cardboard pads. Both had pillows. One had a blanket. An alarm clock next to them was set for 4:35 a. m. The 4:35 wake-up would have been an hour and ten minutes longer than the total break time (including lunch) permitted during the night shift. The Commissioner concluded from this evidence that both employees intended to sleep a substantial period of time when they were required to be working, that they had embarked on this course of action and would have carried it out had they not been interrupted by the employer.

■ The test of whether activity constitutes misconduct for purposes of disqualification from unemployment compensation benefits is whether it is in willful disregard of an employer's interest—the disregard of standards of behavior which the employer has a right to expect of his employee. *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973). *See also Feia v. St. Cloud State College*, 309 Minn. 564, 244 N.W.2d 635 (1976); *Ideker v. LaCrescent Nursing Center, Inc.*, 296 Minn. 240, 207 N.W.2d 713 (1973). Here the issue is not whether the employees should have been terminated. We are only considering whether, now that both are terminated, there should be unemployment compensation, a determination which focuses on the willfulness of the employees' behavior. It is the declared public policy of our state that benefits extend only to those persons who are unemployed through no fault of their own, *Bucko v. J. F. Quest Foundry Co.*, 229 Minn. 131, 137, 38 N.W.2d 223, 228 (1949); "fault" includes an act in willful disregard of an employer's interest.

Because the nature of an employer's interest will vary depending upon the job, what constitutes disregard of that interest,

and therefore misconduct, will also vary. In *Tilseth v. Midwest Lumber Co.*, we held intoxication of a truckdriver was misconduct but intoxication of a gas station attendant was not. In *Feia v. St. Cloud State College*, a custodian's derogatory remarks about nude models was held to be misconduct because peculiarly disruptive to the activities in a college Fine Arts Building. In *Ideker v. LaCrescent Nursing Center, Inc.*, a nursing home employee's harsh language constituted misconduct because such behavior was known to be counterproductive to the care of the home's residents.

■ In the facts before us, employees' blanket, pillows, cardboard beds and alarm clock demonstrate a willful pattern of behavior. Each worked in a night job that paid well, with little accountability. Supervision was difficult, noncompliance largely undetectable. The complaints of other employees indicated morale was in danger of being adversely affected, resulting in dissension. We held in *Heilman v. United Dressed Beef Co.*, 273 N.W.2d 628 (Minn. 1978), that conduct can become misconduct where it "could easily have led other employees to decide that they also need not perform all of the work assigned to them." *Id.* at 630. *See also Booher v. Transport Clearings of Twin Cities, Inc.*, 260 N.W.2d 181, 183 (Minn.1977) (employee's actions caused dissension and disruption within department). Supervisor Ewy testified, "Sure, I don't [normally] get up at 2:30 in the morning and come into the building. I had information, yes. People get discouraged when other people are allowed to sleep when they have to work."

Under the circumstances of this case, the employer had a clear and substantial interest in maintaining a responsible, self-disciplined work environment. Employees' sleeping on the job was in willful disregard of this interest. While a warning given to employees would have strengthened employer's proof, it was not essential in the circumstances of this case in order to demonstrate that both employees had acted in willful disregard of the employer's interest. Therefore, pursuant to the standard of re-

view we follow in these cases, the Commissioner's decision will not be disturbed, there being reasonable evidence tending to support it. *Booher v. Transport Clearings of Twin Cities*, 260 N.W.2d at 183.

Affirmed.

WAHL, Justice (dissenting).

I respectfully dissent. Margaret Auger and Lynn Wickenhouser had been employed as janitors by respondent Gillette Company for 14 and 13 years respectively, at a rate of pay of $7.08 per hour. There is no indication in the record that their work had been anything but satisfactory or that there had ever been any previous complaint, warning, censure or misconduct. Both women normally worked the third shift, from 11 p. m. to 7:30 a. m. Both were terminated from their employment for one incident of sleeping on the job.

The Auger appeals tribunal found that Auger was involuntarily separated from her employment for reasons other than misconduct. The tribunal, viewing Auger as entitled to unemployment compensation benefits, noted that her work had been completely satisfactory during her employment, that the employer had failed to prove that the claimant was guilty of misconduct in taking a nap during her coffee break and lunch break, and further that the employer had failed to establish that the claimant's breaks were excessive. The Wickenhouser appeals tribunal concluded that Wickenhouser was discharged from employment for misconduct and that she was thereby disqualified from receiving unemployment compensation benefits. The tribunal concluded that the greater weight of the evidence was that that claimant and the co-worker intended to sleep for at least two hours and that, in spite of the lack of warnings or evidence of similar incidents, this conduct was sufficiently serious, standing alone, to constitute misconduct.

The evidence on which the Commissioner relied in reversing the Auger appeals tribunal and affirming the Wickenhouser tribunal in finding statutory misconduct was that supervisor Keith Ewy had gone to the building at 2:30 a. m. on August 3, 1979, because of complaints from other personnel that these two employees were regularly sleeping during their employment hours, and had found the two sleeping in the women's locker room on cardboard and pillows with an alarm clock set for 4:35.

It is undisputed that employees were allowed three breaks, including a lunch break on the third shift, aggregating 54 minutes, and that they were free to make whatever use of their breaks they chose. There is no showing that these employees of 14 and 13 years' duration had been told, as they testified they had not been, that they must take their breaks at specific times or that they were not free to aggregate the time allotted for breaks. There is no showing that the "complaints" from other personnel alleged that these employees, even if napping on previous occasions, had slept far longer than their individual aggregated break time.

In my opinion, this is not the substantial evidence which warrants a finding of misconduct. I would reverse.