**GROUP HEALTH PLAN, INC., Relator,**

v.

**Louise LOPEZ, Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. C1–83–1253.**

Court of Appeals of Minnesota.

Dec. 14, 1983.

Dennis R. Homerin, Seyforth, Shaw, Fairweather & Geraldson, Chicago, Ill., Reynolds B. Thomas, Jr., Bloomington, for relator.

Edward Soshnik and Janet Waller, Bloomington, for respondent Louise Lopez.

Hubert H. Humphrey, III, Atty. Gen., Paul N. Heckt, Sp. Asst. Atty. Gen., St. Paul, for respondent Commissioner of Economic Security.

Considered and decided by POPOVICH, C.J., and SEDGWICK and FOLEY, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This matter is before the Court of Appeals on a writ of certiorari from the Department of Economic Security authorized by Minn.Stat. §§ 480A.06(3) and 268.10(8) (1982).

After dismissal of employment by Group Health Plan, Inc., Louise Lopez applied for unemployment benefits. A department claims deputy found her guilty of misconduct and denied benefits. On an administrative appeal, the department appeals tribunal reversed the claims deputy and allowed benefits. Group Health then appealed to the commissioner whose representative, Ordner T. Bundlie, affirmed the appeals tribunal's decision. We affirm.

## FACTS

Louise · Lopez was a licensed practical nurse assigned to the OB–GYN section of the employer's hospital. She has a Down's Syndrome child of her own and overheard

other nurses talking about a patient who was found to be carrying a Down's Syndrome child in her sixth month of pregnancy. The patient was not one to whom Lopez was assigned, but was being treated in the same section. She asked another nurse for the patient's name and address, and wrote an anonymous letter to the patient, telling the patient her own experiences with such a child and assuring the patient that there were many positive rewards in keeping and caring for a Down's Syndrome child. Lopez then wrapped and sealed the letter, together with a booklet written by qualified medical professionals entitled "Aim to Fight Low Expectation of Down's Syndrome Children," which informs parents about what they can expect from a Down's Syndrome child and informs them of a variety of support organizations. She addressed the package to the patient alone and delivered it personally to the patient's home mailbox. Later the patient's husband brought the letter to Group Health, complaining about it and wondering how their address had been obtained. When questioned, Lopez admitted she was the author of the letter and she was immediately discharged.

When Lopez was first hired, she was given an orientation checklist which contained the following statement:

> One of the most important and professional aspects of our job is the security of privileged information. The illness or treatment of patients is confidential. Violation of this policy is cause for disciplinary action.

At some point, she was also shown a memorandum from Dr. Paul Brat, medical director, stressing that an active breach of patient confidentiality could not be tolerated. A breach of confidentiality was defined by Group Health during the hearing as "any sharing of information about a patient that is to anyone other than that patient" and that a non-treating employee who learns something about a patient should first approach the treating physician before talking to the patient directly. This latter rule was not part of relator's written

policies on confidentiality, nor was it ever communicated to respondent prior to her termination.

After her dismissal, Ms. Lopez filed the application for unemployment benefits that Group Health now contests. She has never contested her employer's right to fire her; she has only contested Group Health's attempt to disqualify her from benefits.

## ISSUE

Was the employee guilty of misconduct disqualifying her from unemployment benefits for violation of an employer's policy of patient confidentiality?

## ANALYSIS

This court's scope of review is limited. In an economic security case:

> The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center,* 332 N.W.2d 25 (Minn.1983); *see Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181 (Minn.1977).

In general, the economic security laws are considered humanitarian in nature and are liberally construed. *Hendrickson v. Northfield Cleaners,* 295 N.W.2d 384 (Minn.1980). The legislature intended to assist those who are involuntarily unemployed through no fault of their own. Minn.Stat. § 268.03 (1982); *Yackel v. St. Paul School of Hairdressing, Inc.,* 270 Minn. 203, 133 N.W.2d 29 (1965).

As an outgrowth of the policy, the legislature disqualified those they considered unemployed by reason of their own fault. Those who voluntarily quit and those guilty of misconduct or gross misconduct are disqualified from receiving unemployment benefits. Minn.Stat. § 268.09(1) (1982). The disqualification provisions should be construed strictly. *Smith v. Employer's Overload Co.,* 314 N.W.2d 220 (Minn.1981).

■ Misconduct is generally defined in an industrial sense: actions that make the individual unsuitable for the work he is performing. Unemployment Ins.Rptr. (CCH) ¶ 1970. Under Minnesota law:

> the intended meaning of the term "misconduct" ... is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertence or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973). An employer claiming discharge for misconduct has the burden of proving the misconduct. *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, (Minn.1977).

■ The employer claims that the recent case of *Auger v. Gillette Co.*, 303 N.W.2d 255 (Minn.1981), modifies the *Tilseth* standard and demands an "objective" rather than a "subjective" test for determining misconduct. Group Health's argument is that, since the *Auger* court determined misconduct by looking at the nature of the employer's business, an objective standard is mandated. Neither *Auger* nor any case before or since has mandated an objective or subjective test. There the court substantially restated the *Tilseth* standard and cited *Tilseth* with approval:

> The test of whether activity constitutes misconduct for purposes of disqualification from unemployment compensation benefits is whether it is in willful disregard of an employer's interest—the disregard of standards of behavior which the employer has a right to expect of his employee.

*Id.* at 257.

Actions which may be misconduct in one business may not be misconduct in another business. Under *Auger*, an employee's conduct must still rise to the culpability level of a willful disregard for the employer's interests. *Id.* Inadvertence, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertence or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion still do not rise to the culpability level of willful disregard. *Auger* does not reject, but rather embraces the *Tilseth* standard.

■ Confidentiality of patient records is a very important matter in a hospital or any medical situation. Records privacy is the patient's right. A violation of confidentiality could subject the health care institution to a malpractice claim. *See Koudsi v. Hennepin County Medical Center*, 317 N.W.2d 705 (Minn.1982). A hospital has the right to expect its employees to keep patient records confidential. Under the *Tilseth* standard, a violation of patient records confidentiality is misconduct.

Group Health's policy on confidentiality is vague. Although it considers a breach of confidentiality a serious violation of employment terms, it does not define confidentiality in any meaningful way. The commissioner specifically found, on the basis of testimony, that Group Health's actual policy was that a breach of confidentiality occurred when an employee discloses information about a patient to a third party.

The commissioner's decision that the confidentiality policy in effect at the time prohibited only disclosure to third parties is also supported by the Minnesota Patient Bill of Rights which provides in relevant part:

> (15) Every patient and resident shall be assured confidential treatment of his personal and medical records, and may approve or refuse their release *to any indi-*

*vidual outside the facility,* except as otherwise provided by law or third party payment contract. (Emphasis added).

Minn.Stat. § 144.651 (1982).

This language clearly refers to a release of information to third parties, and not to the patient. Given the facts in this matter, the commissioner was entirely justified in finding, for the purpose of unemployment benefits, that the employer's confidentiality policy prohibited only disclosure to third parties and did not prohibit disclosure by non-treating nurses to the patient. Because the patient's husband found out and complained does not constitute disclosure to a third party. Lopez addressed the envelope only to the patient, intended only communicating with the patient, did not herself communicate with the patient, and did not herself communicate with the husband. If anyone is guilty of misconduct, it is the other unnamed nurse, not the respondent.

## DECISION

The patient was not a third party, the information conveyed was not part of the patient's records, and the employee's actions were not a violation of the employer's policy. The employer has not proven a violation of its own policy or any other standard of confidentiality amounting to misconduct sufficient to deny unemployment benefits. While the employee's actions may have shown lack of discretion and judgment, they were not actions constituting misconduct.

We affirm.