Aaron C. KING, Relator,

v.

LITTLE ITALY, Respondent,

Commissioner of Economic
Security, Respondent.

No. C2–83–1536.

Court of Appeals of Minnesota.

Jan. 4, 1984.

Kent Carlson, Legal Aid Service of Northeastern Minnesota, Virginia, for relator.

Little Italy, pro se.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for respondent Commissioner of Economic Security.

Considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Certiorari was granted to review the decision of the representative of the Commissioner of Economic Security denying claimant Aaron King unemployment compensation benefits because of his misconduct under Minn.Stat. § 268.09, Subd. 1(2) (1982). This appeal seeks to reverse the decision of the commissioner. We affirm.

### Facts

Claimant was employed as a manager by respondent Little Italy, a privately owned restaurant, from March, 1981 to April 30, 1983. At the conclusion of his employment he was working a 3:00 p.m. to 11:30 p.m. shift at an hourly wage.

In the fall of 1981, after tolerating claimant's drinking problem for some time, respondent warned claimant that no drinking on the job was allowed and reporting to work while under the influence of alcohol or drugs would jeopardize his job. A similar warning was given in January, March, and July of 1982.

Claimant is not a diagnosed alcoholic. However, Respondent urged claimant to seek professional help for his growing drinking problem. Claimant took no substantive action.

In January, 1983, claimant was placed on three months probation because of his poor work record, absenteeism, his variable productivity, complaints and his repeated reporting to work intoxicated or hung over. As discipline, he was also taken off regular salary and paid on an hourly wage basis.

On April 12, 1983, respondent and claimant again reviewed claimant's continued poor productivity, employee's declining morale, and other complaints received. Drinking was not discussed. Claimant was warned to make improvements within a month or face wage reduction, hour reduction, or replacement.

On April 27, 1983, 20 minutes before claimant's scheduled shift was to begin, he took himself off his work schedule because all the preparation work that could be done that day was finished and he wanted the day off. He called the owner and said that the restaurant was fully staffed, that he had substituted a lower priced employee to work claimant's regular shift, and he would take the day off to do home yard work. The owner agreed he would be on call in case there was a problem or emergency at the restaurant that evening because claimant did not plan to be in telephone contact, as he intended to work outside.

Claimant was always on call on his days off. When he wanted a day off he made arrangements with others to cover for him.

Approximately two hours after claimant took the day off, he went to the restaurant upon the insistent plea of a fellow employee who had called claimant at home begging him to come to repair a malfunctioning mixer. She said she tried repeatedly to call the owner, who was not available. The claimant went to the restaurant intoxicated, bringing his dog, which roamed unleashed throughout the dining room.

While fixing the mixer, claimant's hand suffered a minor injury. After the hand

was x-rayed and examined, claimant's doctor advised him to stay home from work for a few days. Two days later, claimant was called into work early and given his termination notice.

## Issue

Does the evidence support or tend to support the decision of the commissioner's representative, disqualifying claimant for unemployment compensation benefits?

## Analysis

■ In reviewing decisions of the Commissioner of Economic Security, a reviewing court's scope of review is limited to a consideration of:

[W]hether the department kept within its jurisdiction; whether it proceeded on an erroneous theory of law; whether its action was so arbitrary and unreasonable that it represents its will and not its judgment; or whether the decision of the department is without evidence to support it.

*Johnson v. Wilson & Co.,* 266 Minn. 500, 507, 124 N.W.2d 496, 501 (1964); *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 460, 209 N.W.2d 397, 400 (1973).

Claimant contends that his conduct on April 27, 1982, should not be considered misconduct, disqualifying him from benefits under Minn.Stat. § 268.09, Subd. 1(2). He claims that misconduct cannot be found when he was merely doing respondent a favor by coming in to work on his prearranged day off because of an alleged emergency to repair a malfunctioning piece of equipment. We reject this argument.

Minn.Stat. § 268.09, Subd. 1 (1982) in part provides that:

An individual separated from employment under clauses * * * (2) * * * shall be disqualified for waiting week credit and benefits until 4 calendar weeks have elapsed following his separation and he has earned four times his weekly benefit amount in insured work.

\* \* \* \* \* \*

(2) The individual was discharged for *misconduct* ... connected with his work or for misconduct which interferes with and adversely affects his employment.

■ The burden rests with the employer to establish misconduct. In *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 204 N.W.2d 644, 646 (1973) the Minnesota Supreme Court adopted the following construction of the term 'misconduct:'

[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which an employer has a right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct.'

*Feia v. St. Cloud State College,* 309 Minn. 564, 244 N.W.2d 635 (1976), expanded the definition of misconduct to include any actions that demonstrate a lack of concern for one's job, and in *Group Health Plan, Inc. v. Louise Lopez,* 341 N.W.2d 294 (Minn.Ct.App., Dec. 14, 1983), we considered misconduct and reaffirmed the *Tilseth* rule in light of *Auger v. Gillette Co.,* 303 N.W.2d 255 (Minn.1981).

■ In this matter, claimant had been repeatedly warned against drinking on the job or reporting to work under the influence of alcohol. Health and safety reasons clearly prohibit dogs from roaming unleashed in a public restaurant and is a disregard of an employer's interest.

While it may be unfortunate that claimant was requested to work after taking the day off, it was claimant's own decision to

report to work. It was a voluntary decision on his part, as he was not obligated to work that day. Reporting to work intoxicated, after having just been fully warned that his intoxication at work would not be tolerated, we believe demonstrates a lack of concern for his job.

 The commissioner's findings are reviewed in the light most favorable to his decision, and where there is evidence reasonably tending to sustain them, the findings should not be disturbed. *Booher v. Transport Clearings of Twin Cities, Inc.*, 260 N.W.2d 181, 183 (Minn.1977); *White v. Metropolitan Medical Center*, 332 N.W.2d 25 (Minn.1983).

### Decision

Reviewing the evidence in this record, we find that there is sufficient evidence reasonably supporting the finding of the commissioner's representative that claimant was terminated for his misconduct.

The decision of the representative of the commissioner is hereby affirmed.