Diana STICHA, Relator,

McDONALD'S # 291, Respondent,

Commissioner of Economic
Security, Respondent.

No. C4–83–517.

Supreme Court of Minnesota.

March 30, 1984.

James E. Speckmann, St. Paul, for relator.

Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondents.

WAHL, Justice.

Relator, Diana Sticha, has petitioned this court, by writ of certiorari, for review of the decision of the Commissioner of the Department of Economic Security filed March 18, 1983. This case again raises, from a slightly different angle, the troublesome question of when does a single or relatively isolated incident in the employment relationship of a long-term employee constitute statutory misconduct so as to disqualify the employee for unemployment compensation benefits.

The claims deputy determined that Sticha was discharged for misconduct. The Appeal Tribunal affirmed, finding that the employer had established an "intentional deception". The representative of the Commissioner affirmed, concluding that the Tribunal's finding with regard to "intent" was reasonably supported by the evidence. We reverse.

Sticha was a 10-year employee of a McDonald's restaurant, working as an assistant manager at $6.50 per hour on November 4, 1982. About 6 o'clock that evening, during her 4 p.m. to midnight shift, she telephoned her employer's manager, Mr. Pilachzynski, and told him that she and her sister Donna, who also worked at McDonald's, needed the following day, Friday, November 5, off for their grandfather's funeral. Pilachzynski complained about the late notice but, after ascertaining that Donna had been scheduled to work 9 a.m. to 5 p.m. on Friday and that Sticha had been scheduled to work from 4 p.m. to midnight, and after Sticha asked fellow employee Scott Johnson to close for her on Friday night, he agreed to let them have Friday off, in his words, "taking for granted, not assuming but thinking the funeral was Friday morning."

Early Friday morning Pilachzynski read the funeral notices in the paper and discovered that Sticha's grandfather's funeral was on Saturday, November 6. He immediately called Sticha and, as he later explained in his response to Sticha's statement of claim, "[I] asked her why she lied about when the funeral was? She answered a funeral is a funeral, isn't it. I replied that a wake is a wake not a funeral. She said I'm sorry but it's the same to me—I said so am I and we'll see about your job too." Within 5 minutes Sticha's sister Donna called Pilachzynski and offered to come to work that day although she and Sticha had planned to clean Sticha's house and cook food because relatives were coming over that evening after the wake. Pilachzynski told her it was not necessary for her to come in and that if Sticha had explained he would have given them the time off anyway.

Neither Sticha nor her sister came to work on Friday. The wake for the grandfather was Friday evening. Scott Johnson worked for Sticha from 10 p.m. to midnight and closed for her. He testified at the hearing before the Tribunal that there were enough people to work that evening and that no problems arose either in the handling of the customers or in the closing of the restaurant. Sticha was never al-

lowed to come back to work but was terminated because Pilachzynski determined that she had lied to him about the time of the funeral. Sticha filed a claim for unemployment benefits on November 11, 1982. In Pilachzynski's responsive statement to the Department of Economic Security dated November 18, 1982, he indicated that approximately 5 years earlier, Sticha had been removed from the management staff for about a year for stealing money and had been warned that if she ever again was dishonest, she would be terminated immediately.

The question before this court is whether there is substantial evidence to support the determination of the Commissioner that this long-term employee was discharged for "misconduct" under Minn.Stat. § 268.-09, subd. 1(2) (1982) and was thereby disqualified from receiving unemployment compensation benefits. *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) sets out the construction of "misconduct" which we have adopted from *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941):

> "[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *."

*Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142 (Minn.1984), holds that an isolated hotheaded incident which does not interfere with the employer's business is not "misconduct" which disqualifies an employee from unemployment compensation benefits under Minn.Stat. § 268.09, subd. 1(2) (1982). The incident in Sticha's case, though isolated, is not a "hotheaded" incident except that tempers rose as Pilachzynski accused Sticha of lying and Sticha tried to explain that she considered the wake to be a part of the funeral. But does Sticha's conduct show "an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to [her] employer"? The evidence shows that it does not. Sticha was to work on Friday, November 5 from 4 p.m. until midnight. Her housecleaning thus would have been done earlier in the day on her own time. Donna, whose scheduled shift was from 9 a.m. to 5 p.m. on Friday, offered to come to work but was told it was unnecessary. Sticha had contacted her employer nearly 24 hours in advance of her scheduled starting time to request time off. She arranged for Scott Johnson to work for her from 10 p.m. to midnight and to close for her before Pilachzynski agreed to give her the time off. No problems arose at the restaurant on her shift that night either in the handling of customers or in closing. Finally, Sticha considered the wake to be a part of the funeral. Surely this misunderstanding and lack of communication between the employee and employer, during a time of trauma in the employee's family, does not constitute the "dishonesty" which the employer had prohibited.

We hold that the evidence in this case is insufficient to establish "misconduct" under Minn.Stat. § 268.09, subd. 1(2) (1982) where the employee's conduct evinced a good-faith error in judgment in an isolated instance during her 10 years of employment and did not adversely affect the employer's business. The determination of the Commissioner to the contrary is reversed.

Reversed.

PETERSON, Justice (dissenting).

Relator employee requested and received permission from her employer to take a Friday off for her grandfather's funeral. But the funeral was not on Friday. The funeral was on Saturday, Friday having been requested for the undisclosed purpose of house cleaning for guests attending a wake on Friday evening. Relator was discharged for her deception.

Reversing the findings and conclusions of all three levels of administrative adjudication, the majority concludes there was no statutory misconduct, based upon its own independent finding that "the employee's conduct evinced a good-faith error in judgment in an isolated instance" that "did not adversely affect the employer's business."

I dissent from this extraordinary result. It has been well settled, until today, that the final administrative decision, that of ·the Commissioner of Economic Security, will not be disturbed where there is reasonable evidence tending to support it. *Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181, 183 (Minn.1977). The test of whether activity constitutes misconduct for purposes of disqualification from unemployment compensation benefits, as we said in *Booher,* is whether the activity is in willful disregard of an employer's interest, the "disregard of standards of behavior which an employer has a right to expect of an employee." *Id. See also Semanko v. Dept. of Employment Services,* 309 Minn. 425, 244 N.W.2d 663 (1976); *Nyberg v. R.N. Cardozo & Brother, Inc.,* 243 Minn. 361, 67 N.W.2d 821 (1954).

The majority opinion appears now to adopt the views of the sole dissenting justice in *Auger v. Gillette Co.,* 303 N.W.2d 255 (Minn.1981), where a denial of unemployment compensation benefits was affirmed in a situation where unsupervised night janitors were discovered sleeping in the locker room on the employer's premises during working hours. There, the majority said:

> Under the circumstances of this case, the employer had a clear and substantial interest in maintaining a responsible, self-disciplined work environment. Employees' sleeping on the job was in willful disregard of this interest. While a warning given to employees would have strengthened employer's proof, it was not essential in the circumstances of this case in order to demonstrate that both employees had acted in willful disregard of the employer's interests.

303 N.W.2d at 257. The dissenting justice, writing for the majority in today's case, said, there as here, that there was "not the substantial evidence which warrants a finding of misconduct," and reasoned that "[t]here is no indication in the record that their work had been anything but satisfactory or that there had ever been any previous complaint, warning, censure or misconduct" and that "[b]oth were terminated from their employment for one incident of · sleeping on the job." 303 N.W.2d at 258.

Here, the commissioner found as fact that there was deception rather than "misunderstanding and lack of communication" on the part of relator. These are the dispositive findings of the appeals tribunal as confirmed by the commissioner:

> On November 7, 1982 the claimant was discharged from this employment because she had misrepresented the reason for requesting the day off from work on November 5, 1982. The claimant had been warned in the past that it was important that she be honest with her employer in regard to her job performance.

> On November 4, 1982 the claimant called and informed the above-named employer that it was necessary that she have the day off on November 5, 1982 to attend her grandfather's funeral. The manager agreed to excuse her for that day and for that reason.

Discussing the reasons for its decision, the appeals tribunal said:

> The evidence supports a finding that the claimant intentionally deceived her manager in order to take a day off to clean her house and prepare for a wake. The claimant in the past had been warned that she must be completely honest with her employer or risk dismissal.

Given the supported findings of fact in the administrative adjudication, where issues of credibility of witnesses are resolved, I cannot accept the notion that deliberate deception so directly affecting the obligations of employment does not constitute statutory misconduct. I would affirm the determination of the Commissioner of Employment Security.

KELLEY, Justice (dissenting).

I join in the dissent of Justice Peterson.

COYNE, Justice (dissenting).

I join in the dissent of Justice Peterson.