GREEN TREE ACCEPTANCE,
INC., Relator,

v.

Michael A. REED, Respondent,

and

Commissioner of Economic
Security, Respondent.

No. C6–83–1734.

Court of Appeals of Minnesota.

May 29, 1984.

Alan L. Atlas, Minneapolis, for relator.

Michael A. Reed, pro se.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for Com'r of Economic Sec.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

POPOVICH, Chief Judge.

Relator seeks review of the determination of the Commissioner of Economic Security that the employee's conduct in accepting money from an independent appraisal firm was not willful disregard of relator's interests and did not constitute carelessness or negligence of such degree as to manifest equal culpability. We reverse.

## FACTS

Relator is engaged in financing mobile homes. Respondent Reed was the manager of relator's Minneapolis regional office. He was employed from November 1979 to March 31, 1983.

Reed's duties included obtaining appraisals on used mobile homes to be financed by relator. The amount financed by relator is based primarily on the appraised value. Reed's duties included obtaining correct appraisals. Reed was not personally required, but was permitted, to conduct the

appraisals himself. Appraisals were usually conducted by subordinate employees or by independent appraisal companies.

For approximately two years prior to his discharge, Reed employed a Colorado appraisal firm to appraise used mobile homes financed by relator. The appraisal firm charged $85.00 for each appraisal, paid by the dealer involved in the sale.

In January and February of 1983, Reed personally inspected mobile homes as part of the appraisal process. Reed sent his appraisal reports to the Colorado firm which then submitted the appraisal to the dealer with a bill for $85.00. Reed received $50.00 for the fee. Reed conducted about 20 inspections during January and February of 1983 and was paid approximately $1,000.00 by the Colorado firm. Reed's inspections were conducted on his own time and no supplies or funds belonging to relator were used.

Reed was discharged from his employment on March 31, 1983 when relator discovered that Reed was being paid by the Colorado firm for inspecting mobile homes relator financed.

### ISSUE

Whether employee's acceptance of money for inspecting mobile homes that the employer financed, without employer's knowledge, constituted misconduct disqualifying him from receiving unemployment compensation benefits?

### ANALYSIS

Minnesota Statutes § 268.09(1) (1982) provides that individuals terminated for misconduct or gross misconduct are disqualified from receiving unemployment benefits. "Misconduct" is defined as:

... conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful in-

tent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer ....

*Group Health Plan, Inc. v. Lopez,* 341 N.W.2d 294, 297 (Minn.Ct.App.1983) (citing *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973)).

The Commissioner's representative found that while "there is no doubt that [Reed] acted wrongfully," Reed did not *knowingly* conduct himself in a manner which was adverse to relator's best interests. This finding is supported by Reed's testimony that he did not know his conduct was wrong and he did not intend to harm his employer.

The Commissioner's representative failed to consider the entire definition of misconduct. Even if Reed's conduct did not evince willful disregard of relator's interests, it evidenced "carelessness or negligence of such degree as to manifest equal culpability." *Id.*

A reasonable person should have known that Reed's conduct was wrong. Would Reed continue to use the Colorado firm even if its work quality declined in order to continue receiving his $50.00 fee? While there was no evidence that relator received any improper appraisals, Reed's receipt of payment from the firm made it unlikely that he could supervise the appraisal process in an unbiased manner. The potential for harm should have been obvious, especially to an employee with Reed's authority and responsibility.

### DECISION

Reed's acceptance of compensation from an appraisal firm which he hired to perform mobile home appraisals for relator, which later provided financing for their sale, constituted a potential conflict of interest which should have been obvious to him. As such, it constituted misconduct disqualifying him from receiving unemployment compensation benefits.

Reversed.