*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0728**

Timothy J. Fish,
Relator,

vs.

Young Men's Christian Association - YMCA Brainerd,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed December 15, 2014
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 31970545-3

Timothy J. Fish, Crosby, Minnesota (pro se relator)

Young Men's Christian Association – YMCA Brainerd, Brainerd, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Reyes, Judge; and Crippen, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WORKE**, Judge

Relator challenges the unemployment-law judge's (ULJ) decision that he was discharged for employment misconduct and ineligible for unemployment benefits. We affirm.

## DECISION

The ULJ determined that relator Timothy J. Fish was discharged from his employment as an evening custodian at respondent Young Men's Christian Association – YMCA Brainerd for employment misconduct and is ineligible for unemployment benefits. We review a ULJ's decision to determine whether substantial rights were prejudiced because the findings, inferences, conclusions, or decision are unsupported by substantial evidence in view of the record as a whole or affected by an error of law. 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)).

An employee who is discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). Employment misconduct is "intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." 2014 Minn. Laws ch. 239, art. 2, § 4, at 772 (to be codified at Minn. Stat. § 268.095, subd. 6(a) (2014)).

2

Whether an employee committed employment misconduct is a mixed question of law and fact. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). "Whether the employee committed a particular act is a fact question, which we review in the light most favorable to the decision and will affirm if supported by substantial evidence." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011). But whether that particular act constitutes disqualifying misconduct is a question of law that we review de novo. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

The ULJ found that on December 1, 2013, Fish punched in for work and then went into an empty room, removed his glasses and shoes, and lay on a couch because he was not feeling well. Another employee found Fish in this position approximately 30 minutes later. Fish neither explained to this employee that he was ill, nor sought permission to lie down from a supervisor. While Fish concedes that he committed this act, he argues that it was not misconduct.

Fish first argues that the ULJ should not have considered an incident from 2008 in evaluating whether this current incident was misconduct. The YMCA presented to the ULJ counseling forms documenting Fish's work performance. One from 2008 indicated that Fish was reading a newspaper when he had approximately 40 minutes remaining in his shift. The form provided: "Since previous warnings have been given, if there are any additional complaints [the YMCA] will be forced to terminate your employment. Final warning." Fish claims that the incident from 2008 was an isolated, unrepeated incident, and was too stale to be relevant. Contrary to Fish's assertion, the incident from 2013 was

3

the second time that Fish failed to work while punched in. And, despite the first incident occurring in 2008, Fish received warnings in 2009 and 2010.

A form from 2009 indicated that: "[Fish] has failed to respond to notes left for him requesting improved and corrected cleaning in [the lobby and women's locker room] and has not demonstrated a consistent cleaning work ethic." The form served as "warning that further violation or continued unsatisfactory performance may result in immediate termination." And one from 2010 indicated: "Unsatisfactory performance [failure to adequately clean the women's locker room] has also been discussed with [Fish] and documented in previous evaluations, meetings and trainings all signed by [Fish]." The form served "as a FINAL documented warning that further violation or continued unsatisfactory performance will result in immediate termination."

The incident from 2008 was not an isolated event, but served as the starting point in tracking Fish's progressively deficient work performance. *See Drellack v. Inter-Cnty. Cmty. Council, Inc.*, 366 N.W.2d 671, 674 (Minn. App. 1985) (stating that employee's behavior "as a whole" may be considered in determining the propriety of the discharge and qualification for unemployment benefits); *Flahave v. Lang Meat Packing*, 343 N.W.2d 683, 686-87 (Minn. App. 1984) (adopting a last-straw doctrine in concluding that repeated infractions of employer's rules demonstrate substantial disregard of employer's interest and the duties and obligations owed to the employer).

Fish also argues that his work performance was merely unsatisfactory. Simple unsatisfactory conduct is not employment misconduct. 2014 Minn. Laws ch. 239, art. 2, § 5, at 772 (to be codified at Minn. Stat. § 268.095, subd. 6(b)(3) (2014)). But "[a]n

employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004); *see Evenson v. Omnetic's*, 344 N.W.2d 881, 883 (Minn. App. 1984) (stating that an employer has the right to reasonably expect an employee to work scheduled hours). "[A]n employee's decision to violate knowingly a reasonable policy of the employer is misconduct" and "[t]his is particularly true when there are multiple violations of the same rule involving warnings or progressive discipline." *Schmidgall*, 644 N.W.2d at 806. Despite being warned after the incident in 2008 that he was expected to work when he was punched in, Fish failed to follow this reasonable directive.

Fish further argues that his conduct was reasonable under the circumstances and had no negative impact on the YMCA. In *Auger v. Gillette Co.*, the supreme court determined that two night janitors were not entitled to unemployment benefits after they were terminated for sleeping on the job. 303 N.W.2d 255, 256-57 (Minn. 1981). In *Auger*, the employees were found sleeping on cardboard, with pillows, a blanket, and an alarm clock. *Id.* at 257. Relevant in the court's analysis was the fact that the employees worked at night with little supervision and accountability. *Id.* Also relevant were "complaints of other employees indicat[ing] morale was in danger of being adversely affected." *Id.*

Similar to *Auger*, Fish was an evening custodian with little supervision and accountability. Also similar is that Fish was comfortably settled with his shoes and glasses removed. While Fish claims that he was not feeling well, it was quite

coincidental that he was well enough to work at the moment the other employee entered the room. *See Krantz v. Larco Div.*, 363 N.W.2d 833, 834 (Minn. App. 1985) (stating that deliberate work avoidance may support a determination of employment misconduct). Additionally, Fish's conduct negatively impacted the YMCA because he challenged his employer's ability to trust that he would perform his job duties. *See Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006) (concluding that cashier's single theft, in the context of her job responsibilities, had a significant adverse impact because the employer could no longer trust the employee). The YMCA was also negatively impacted because, like *Auger*, an employee complained about Fish's conduct.

Fish lastly argues that he used his best discretion and committed an error in good faith. Good-faith errors in judgment if judgment is required are not employment misconduct. 2014 Minn. Laws ch. 239, art. 2, § 5, at 773 (to be codified at Minn. Stat. § 268.095, subd. 6(b)(6) (2014)). When a directive is clear, no judgment is required. *Potter v. N. Empire Pizza, Inc.*, 805 N.W.2d 872, 877 (Minn. App. 2011), *review denied* (Minn. Nov. 15, 2011). Judgment was not required. Fish punched in to work, not to lie down. He was not in a position to judge whether he should work or lie down. Even if judgment was required, Fish's conduct was unreasonable. If Fish were not feeling well when he punched in, it would have been reasonable for him to either (1) punch out, rest, and punch in again when he was feeling well, or (2) call his supervisor and seek permission to lie down. The ULJ appropriately determined that Fish engaged in employment misconduct that resulted in him being ineligible for unemployment benefits.

**Affirmed.**

6