*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0652

Colleen Campbell,
Relator,

vs.

Planned Parenthood of Minnesota (Corp.),
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed February 2, 2015**
**Affirmed**
**Hudson, Judge**

Department of Employment and
Economic Development
File No. 31691598-3

Thomas H. Boyd, Aalok K. Sharma, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for relator)

Susan A. Casey, Planned Parenthood Minnesota North Dakota, South Dakota, St. Paul, Minnesota (for respondent Planned Parenthood)

Lee B. Nelson, Munazza Humayun, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Minge, Judge.[*]

## UNPUBLISHED OPINION

**HUDSON**, Judge

In this certiorari appeal, relator argues that the unemployment-law judge (ULJ) erred by determining that relator was discharged for employment misconduct, making her ineligible for unemployment benefits, maintaining that her single, inadvertent disclosure of patient information was not a serious violation of her employer's reasonable expectations and that the ULJ's initial finding that her actions were "innocent and inadvertent" established as a matter of law that she did not commit misconduct. We affirm.

## FACTS

Relator Colleen Campbell worked as a call-center agent for respondent Planned Parenthood of Minnesota, North Dakota, South Dakota from early 2009 until October 2013, when she was discharged. She applied for unemployment benefits and was determined ineligible based on employment misconduct.

At an appeal hearing before a ULJ, Planned Parenthood's human resources manager testified that Campbell was terminated for a reportable HIPAA violation and after previous disciplinary actions, although the HIPAA violation was serious enough to warrant termination by itself. A call center supervisor testified that he received an e-mail

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

from another employee, E.S., stating that Campbell had sent her a chat message stating that Campbell had just scheduled E.S.'s cousin as a patient, with a follow-up message stating the cousin's name. He testified that Campbell would have been aware that her action violated HIPAA confidentiality standards. Planned Parenthood's policy also requires that employees take care to avoid mentioning identifying patient information, particularly a patient name, when a possibility exists of being overheard by a person not involved in the patient's care. Campbell had previously received a final warning about answering her personal cell phone when she was at her desk, following an earlier warning about her conduct in the call center expressing frustration at a caller.

Campbell testified that on the day she sent the chat message, the center was short-staffed and she was multi-tasking. She testified that the patient asked whether she was sitting next to E.S., and she said no, but that was all that she could discuss. The patient then said he was E.S.'s cousin, and she scheduled his appointment. Campbell testified that she believed that the patient wanted her to say hello to E.S., even though he did not say that, so she quickly messaged E.S. that her cousin just called, without mentioning the word "appointment." She said that it was possible she accidentally cut and pasted the patient's name and sent that information to E.S. She testified that she had no understanding that this exchange violated HIPAA and that, even though she went through training, she "wonder[ed] why it would be a violation if he already knew she worked there" and she revealed no information about the patient's appointment or diagnosis.

Campbell testified that she got the impression that E.S. told the patient to call and make an appointment and the patient was expecting to talk to E.S., but he got Campbell

3

instead. She testified that she assumed that the patient expected her to share the information that he had called, but agreed that it was possible that he had asked if E.S. worked there because he did not want E.S. to know he had called. She agreed that there was no business reason to send the message to E.S. or let E.S. know that his cousin had called.

Campbell testified that she was not given specific direction about whether the name of a person who had called for an appointment could be shared internally. But another supervisor testified that giving a patient's name would be considered a HIPAA violation, and Planned Parenthood had a policy based on the HIPAA law.

In an initial decision, the ULJ determined that Campbell was not discharged for employment misconduct, stating that "[t]he record supports a finding that [her] disclosure of this information was innocent and inadvertent." Planned Parenthood requested reconsideration, and the ULJ issued a decision determining that his previous decision was "not factually and legally correct." The ULJ found that an important fact not given due consideration was Campbell's status on a final written warning; that the evidence supported a finding that her contact with the caller was to schedule a medical appointment, and that no business reason existed for Campbell to communicate with E.S.; and that Campbell testified that she was well aware of HIPAA policy. The ULJ therefore determined that Campbell was ineligible for unemployment benefits based on employment misconduct. This certiorari appeal follows.

**D E C I S I O N**

Campbell challenges the ULJ's conclusion that she engaged in employment misconduct and is ineligible for unemployment benefits. This court may remand, reverse, or modify the decision of a ULJ if the substantial rights of the relator may have been prejudiced because the findings, conclusion, or decision are in violation of constitutional provisions or unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d)(1), (5) (2014). Substantial evidence means "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002).

An employee who is discharged because of employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct is "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a). Employment misconduct does not, however, include "conduct that was a consequence of the applicant's inefficiency or inadvertence," simple unsatisfactory conduct, poor performance because of inability or incapacity, or good-faith errors in judgment. Minn. Stat. § 268.095, subd. 6(b)(2), (3), (5), (6) (2014).

"Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place,*

5

*Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). "Whether the employee committed a particular act is a fact question." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011). But whether a particular act amounts to disqualifying misconduct is a question of law, which this court reviews de novo. *Stagg*, 796 N.W.2d at 315. We review the ULJ's factual findings "in the light most favorable to the decision" and defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

Campbell argues that her conduct of messaging E.S. about her cousin's call to Planned Parenthood was only inadvertent and did not rise to the level of employment misconduct. Inadvertence has been defined as "an oversight or a slip," and inadvertent conduct is "not duly attentive or marked by unintentional lack of care." *Dourney*, 796 N.W.2d at 540 (quotation omitted). In *Dourney*, this court held that an employee's one-time failure to request identification from a customer before serving an alcoholic beverage was inadvertent conduct, which did not preclude her from receiving unemployment benefits. *Id*. But negligence, on the other hand, "is the failure to use the care that a reasonable person would use in the same or similar circumstances." *Id*. Here, a Planned Parenthood supervisor testified that Campbell initiated two chat messages to E.S. regarding her cousin's call. We cannot agree that her conduct in doing so was inadvertent, and we agree with the ULJ that her actions amounted to employment misconduct.

"As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644

6

N.W.2d 801, 804 (Minn. 2002). And we have previously held that a violation of patient records confidentiality constitutes employment misconduct. *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 297 (Minn. App. 1983). Campbell testified that she was aware of HIPAA policy and had received training in Planned Parenthood's confidentiality policies, but she points out that she did not disclose actual health and medical information and did not initiate the messages to further her own interest. Nonetheless, her action violated an express no-tolerance policy of her employer relating to patient confidentiality. *See Schmidgall*, 644 N.W.2d at 804.

Campbell also argues that she did not think that she was disclosing confidential information because the caller already knew that E.S. worked at Planned Parenthood. But this argument ignores the policy's purpose to protect the confidentiality of patient information. And as the ULJ correctly found, a reasonable inference may be drawn from the record that the prospective patient asked specifically about his cousin working at Planned Parenthood because he did not wish her to learn that he had scheduled an appointment there.

Campbell further argues that because her conduct involved a single act, that factor should weigh against a determination that she committed employment misconduct. *See* Minn. Stat. § 268.095, subd. 6(d) (stating that if the conduct involved a single incident, the ULJ must consider that factor in weighing whether the conduct constitutes employment misconduct). But that argument ignores the fact that Campbell had received a final warning before this incident, based on her previous conduct in the call center.

7

Campbell finally asserts that because the ULJ on reconsideration did not expressly vacate his finding that her actions were "innocent and inadvertent," that finding still stands. On reconsideration, the ULJ may issue "a decision modifying the findings of fact, reasons for decision, and decision" previously issued. Minn. Stat. § 268.105, subd. 2 (f)(2) (2014). Here, the ULJ changed his decision, based in part on Campbell's status on a final written warning and her knowledge that her job was in jeopardy. Once the ULJ has issued his decision on reconsideration, we review that determination, not the ULJ's previous decision. *See* Minn. Stat. § 268.105, subd. 7(a) (2014) (stating that this court "review[s] the unemployment law judge's decision on reconsideration"). The initial decision is replaced.

In sum, the ULJ did not err by determining that Campbell's conduct rose to the level of employment misconduct and by denying her benefits as a result of her discharge.

**Affirmed.**