**David JAMES, Relator,**

v.

**COMMISSIONER OF ECONOMIC SECURITY, Respondent.**

No. C8–84–479.

Court of Appeals of Minnesota.

Sept. 18, 1984.

Bernard P. Becker, St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This is an appeal of a Commissioner of Economic Security decision, after remand from the Minnesota Supreme Court in *James v. Commissioner of Economic Security*, 339 N.W.2d 891 (Minn.1983), denying unemployment benefits to relator David James because he was not actively seeking work as required by Minn.Stat. § 268.08, subd. 1(3) (1982). Relator contends the Commissioner did not follow the remand instructions set forth in *James*.

We affirm.

## FACTS

Relator David C. James is an experienced welder. He was employed by Porter, Inc. for sixteen years and was laid off because of a downturn in business conditions. He filed a claim for unemployment compensation benefits effective May 2, 1982.

On July 7, 1982, relator was advised by a representative of the Department of Economic Security that to continue eligibility for benefits he must actively seek employment by contacting the state job service office and by making several in-person job contacts each week. The requirements were written and signed by relator.

Between September 26 and October 16, 1982, relator contacted only four employers

by phone and made only two visits to the job service office. A claims deputy determined relator was ineligible for benefits for failure to actively seek work.

At the appeals tribunal hearing a department representative said an adequate job search for James would be two or three in-person job contacts per week, and that:

I normally tell people in the course of an interview that there may not be openings, but what we are looking at is that they are making the attempt to get applications on file, in case openings do occur in the future.

James said he contacted employers by phone because he had no transportation money and was told applications were not being accepted for welders because there were no openings.

The appeals tribunal affirmed the claim deputy's determination that relator was ineligible for benefits for failure to meet the active work search requirement. The Commissioner of Economic Security also affirmed and said, "Even if we felt that telephone contacts were sufficient (which we do not), it is obvious that the claimant did not actively seek work under any definition."

Relator appealed and the Minnesota Supreme Court reversed and remanded with instructions. *James*, 339 N.W.2d at 891. Instructions for the remand were given by the Court:

The department has promulgated 8 MCAR § 4.3005 (1982), a rule which generally defines the nature and scope of an active work search. The rule contains objective criteria against which conduct may be measured to determine an individual's entitlement to benefits under Minn.Stat. § 268.08, subd. 1(3) (1982).

In the instant matter, *neither the appeal tribunal nor the representative of the commissioner defined the term 'active work search' within the context of the relator's claims or compared his efforts to articulable, objective standards to determine his eligibility for benefits*. The formulation of a definition and its application to the recorded facts are essential to effective judicial review of the department's determination.

We therefore reverse and remand to the department for further proceedings consistent with this decision. *Consideration shall be given to the general criteria contained in 8 MCAR § 4.3005 (1982) as applicable to this relator.*

*Id.* (emphasis added).

On remand, the Commissioner affirmed the decision of the appeals tribunal that relator was ineligible for receipt of benefits because of an inadequate work search. The Commissioner recited the provisions of 8 MCAR § 4.3005 and stated in pertinent part:

Paragraph B of the Rule requires the claimant to comply with the instructions given to him by the Department if such instructions are reasonable.

There was testimony from an area office representative to the effect that the Department normally requires a claimant to make several in-person job contacts each week to maintain his eligibility. The evidence further establishes that this requirement was communicated to the claimant in July of 1982 and again in September of 1982. We believe that these instructions were reasonable. With respect to the type of work that the claimant was seeking, the Department has long maintained that the most effective way to obtain gainful employment is by in-person job contacts, and not by telephone contacts.

The record is clear that the claimant did not make any in-person job contacts during the three weeks in question. While the claimant maintains that he was unable to make any in-person contacts owing to his lack of funds, there is no evidence proving that he tried to tell the area office representatives of this prior to the period in question, and he did not present any corroboration of his financial position at the hearing. We take note of the fact that almost all claimants are financially disadvantaged while drawing unemployment compensation, and accordingly we do not feel that claimant's cir-

cumstances are in any way unusual or unique. While the claimant may not have had any regular income, he was receiving unemployment benefits, which should have provided him with the resources to go out and seek work on an in-person basis. We simply do not feel that the claimant's unsupported allegation that he did not have the funds to seek work is sufficient to justify his non-compliance with the instructions received from the area office.

The decision of the Commissioner was filed on February 15, 1984. In a letter dated February 8, 1984, relator's attorney made an offer of proof which relator asserts was refused:

> We have contacted the personnel department of an employer in this field, and at this point, we would make an offer of proof that if a hearing were convened on this matter, we would establish through the testimony of these persons knowledgeable about the prospects for welders during this period of 1982 that (1) there was no difference in terms of job prospects between a person who came into the firm's offices or telephoned; and (2) that hiring of welders was not going on.

Relator's attorney also wrote the Commissioner on February 16 that the Commissioner erred in saying that relator's financial circumstances were in no way unique and that the unemployment benefits should have provided him the resources to go out and seek work on an in-person basis. The error, stated the attorney, was that relator had also been disqualified from receipt of benefits from September 12 to September 25, 1982. The Commissioner's representative replied that while the statement was erroneous, it did not have any effect on the ultimate decision and said:

> It is simply an irrelevant consideration and should never have been mentioned. * * * If the instructions were unreasonable or burdensome for the claimant in considering his particular circumstances, he should have approached the local office people with the problem. If there

really was a problem, the instructions may have been adjusted.

## ISSUE

Did the commissioner properly deny unemployment benefits to relator?

## ANALYSIS

■ 1. Our scope of review of eligibility determinations is limited.

The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed. *Group Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 296 (Minn.Ct.App.1983) (quoting *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983)).

■ In addition, we must ensure that the remand instructions set forth in *James* were followed. The thrust of these instructions required the Commissioner to reflect consideration of relator's circumstances as measured against the general standards for an active job search. *James*, 339 N.W.2d at 891. The record indicates the Commissioner on remand at least minimally gave the consideration required.

2. The Minnesota unemployment compensation statute requires a person actively seek work to maintain eligibility for benefits. Minn.Stat. § 268.08, subd. 1(3) (1982). The term "actively seeking work" is generally defined in Minn.Rules § 3305.0600 (1983) (formerly 8 MCAR § 4.3005 (1982)). Relevant sections of that rule state:

> Generally. A claimant must make reasonable, diligent efforts to actively seek work for each week for which he files a claim. Reasonable, diligent efforts are those that a person in similar circumstances would make if genuinely interested in obtaining suitable employment under the existing conditions in the labor market area. * * *

> Subp. 2. Scope of work search. A claimant is not actively seeking work if he has not sought suitable work in accordance with specific and reasonable in-

structions of the department. The claimant may be required to * * *:

* * * * * *

F. make application with employers who may reasonably be expected to have openings;

* * * * * *

I. perform any other reasonable action which the department finds to constitute an effective means of seeking work suitable to the claimant.

*Id.*

Relator contends the Commissioner erred in determining the job search instructions given by the department were reasonable. In particular, he asserts that a claimant should not be required to make in-person contacts where there are no suitable openings in his trade and employers are not accepting applications.

We disagree. Relator was instructed to make several in-person contacts each week. In determining this instruction was reasonable, the Commissioner cited testimony that the department usually requires claimants to make several in-person job contacts per week to maintain eligibility. The Commissioner then reiterated the department's position "that the most effective way to obtain gainful employment is by in-person job contacts and not by telephone contacts." Deference must be given to an agency's expertise in its area of technical training and experience. In *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808 (Minn.1977), the Minnesota Supreme Court said:

[D]ecisions of administrative agencies enjoy a presumption of correctness, and

deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience.

*Id.* at 824.

## DECISION

We believe the Commissioner's decision was not arbitrary, is supported by the evidence, and followed the instructions in *James.*

Affirmed.

CRIPPEN, Judge (dissenting).

Believing that the decision of the Commissioner should be reversed and remanded, I respectfully dissent.

Our review of the Commissioner's decision involves a dual standard. We must defer to the special knowledge of the Commissioner and avoid substituting our judgment for his. But, we must closely scrutinize his decision and intervene when he has failed to give "reasoned consideration to all material facts and issues." *Greater Boston Television Corporation v. F.C.C.*, 444 F.2d 841, 851 (D.C.Cir.1970), certiorari denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).[1] *See Reserve Mining Co.*, 256 N.W.2d at 824–825. "The deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia." *Volkswagenwerk Aktiengesellschaft v. FMC*, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968).[2]

In his initial decision, the Commissioner's representative said it was "obvious" that relator "did not actively seek work under any definition." Responding to the man-

---

1. Because so much of the language in the *F.C.C.* case was repeated and approved in *Reserve Mining Co., Id.,* it is worthwhile noting several observations in the D.C. Circuit opinion:
   Expert discretion is secured, not crippled, by the requirements for substantial evidence, findings and reasoned analysis. * * *
   * * * The function of the court is to assure that the agency has given reasoned consideration to all the material facts and issues. * *

   Its supervisory function calls on the court to intervene * * * if the court becomes aware,

especially from a combination of danger signals, that the agency has not really taken a "hard look" at the salient problems, and has not genuinely engaged in reasoned decision-making.
*Greater Boston Television Corporation, Id.* at 850–851.

2. This quotation was included in the analysis of the standard of review in *Greater Boston Television Corporation*, 444 F.2d 850. See footnote 1.

date of the Minnesota Supreme Court for further consideration of the issue, the Commissioner has added very little. In his current decision, the Commissioner's representative states the long-standing contention of the department that in-person job contacts are the most effective way to obtain employment, and he states without further discussion that it was reasonable to instruct relator to make those contacts. The decision shows no consideration of the kind of work relator sought, or the economic circumstances at the time of his job search. It inadequately addresses relator's claim that he was unable to pay for travel to look for employment. The decision fails to note any evidence or explanation to support a department policy to require in-person job contacts by all unemployed persons without regard for circumstances of the case.

I am convinced the Commissioner failed to consider the issue in this case, i.e., whether in-person job contacts were needed to demonstrate reasonable and diligent job search efforts in the situation encountered by this relator.

Additionally, I am of the opinion that the Commissioner's decision fails to satisfy the mandate of the Minnesota Supreme Court in *James*, 339 N.W.2d 891. In the mandate and in several additional statements in the *James* opinion it is emphasized that the court expected a comparison of relator's efforts to seek work with standards articulated in administrative rules. The Supreme Court insisted upon an application of legal standards to the particular facts in the case. In my opinion, that application of standards, a comparison of the standards with the facts, has not yet occurred.