*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0161**

Julie Strowbridge,
Relator,

vs.

Maid in America, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 8, 2014
Affirmed in part and reversed in part
Chutich, Judge**

Department of Employment and Economic Development
File No. 31426846-6

Julie Strowbridge, Brainerd, Minnesota (pro se relator)

Maid in America, Inc., Brainerd, Minnesota (respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Relator Julie Strowbridge challenges the unemployment-law judge's determination that she was ineligible for unemployment benefits and that she had to repay $997 of benefits she had already received. Because Strowbridge was unavailable for suitable employment from July 7 to August 4, 2013, we affirm the denial of benefits for that period of time. Because Strowbridge was available for and actively seeking suitable employment beginning on August 5, 2013, we reverse the denial of benefits after that date.

## FACTS

Strowbridge worked as a maid with a cleaning service company for over 17 years. While working for the company on July 4, 2013, Strowbridge injured her back and the company fired her. Because of her injury, Strowbridge was unable to sit or stand for 3 weeks to a month following the incident. During this time, Strowbridge received unemployment benefits.

On July 24, 2013, the Minnesota Department of Employment and Economic Development (department) sent Strowbridge a notice, stating that she was ineligible for benefits retroactive to July 7 because she was physically unable to work. Strowbridge appealed the department's determination. On August 5, while her appeal was pending, Strowbridge's doctor released her to work a sedentary position with the following limitations: no standing, no squatting or bending, no lifting more than ten pounds, walking less than one hour, sitting less than thirty minutes with the ability to change

positions, and driving less than three hours. These restrictions were lifted on September 3, and five days later Strowbridge began working a part-time position at Bethany Good Samaritan.

In November 2013, an unemployment-law judge held an evidentiary hearing to consider Strowbridge's appeal. In the hearing, Strowbridge testified that she began to search for a job after her doctor cleared her to work with limitations on August 5. Because she did not have Internet at home, Strowbridge said that she spent 6 to 12 hours per week driving around in her car and walking into businesses to speak with potential employers. Strowbridge also testified that she visited a Minnesota Workforce Center. Strowbridge estimated that she applied to three or four jobs per week, but in her hearing with the unemployment-law judge, she could only recall the names of five businesses to which she had applied.

Based on Strowbridge's testimony, the unemployment-law judge determined that: (1) from July 7 to August 4, 2013, Strowbridge was unavailable for suitable employment; (2) from August 5 until conditions change, Strowbridge was available for suitable employment; (3) from July 7 until conditions change, Strowbridge was not actively seeking suitable employment; and (4) from July 7 until conditions change, Strowbridge was ineligible for employment benefits and must reimburse the department $997 for an overpayment of benefits. The unemployment-law judge determined that Strowbridge was not actively seeking suitable employment because her search did not "reflect the reasonable, diligent efforts an individual in similar circumstances would make if genuinely interested in obtaining suitable employment."

After Strowbridge's request for reconsideration was denied, this appeal by writ of certiorari followed.

**D E C I S I O N**

We review de novo an unemployment-law judge's determination that an applicant is ineligible for benefits. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 30 (Minn. App. 2012). This court may affirm the unemployment-law judge's decision, remand it for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." 2014 Minn. Laws, ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)). An unemployment-law judge's findings of fact are viewed in the light most favorable to the decision, and we defer to the unemployment-law judge's credibility determinations. *McNeilly v. Dep't of Emp't & Econ. Dev.*, 778 N.W.2d 707, 710 (Minn. App. 2010).

The purpose of the Minnesota Unemployment Insurance Program is to provide "workers who are unemployed through no fault of their own a temporary partial wage replacement to assist the unemployed worker to become reemployed." Minn. Stat. § 268.03, subd. 1 (2012). The Minnesota Unemployment Insurance Law "is remedial in nature and must be applied in favor of awarding benefits." Minn. Stat. § 268.031, subd. 2 (2012).

4

To qualify for unemployment benefits, an applicant must be available for suitable employment and be actively seeking suitable employment. Minn. Stat. § 268.085, subd. 1(4), (5) (2012). An applicant who is "ready, willing, and able to accept suitable employment" is considered available for suitable employment. *Id.*, subd. 15(a) (2012). An applicant who is making "those reasonable, diligent efforts an individual in similar circumstances would make if genuinely interested in obtaining suitable employment" is actively seeking suitable employment. *Id.*, subd. 16(a) (2012).

### *Benefits Eligibility from July 7 to August 4*

The unemployment-law judge found that from July 7 to August 4, Strowbridge was unavailable for suitable employment and therefore not entitled to unemployment benefits. We agree.

In her hearing with the unemployment-law judge, Strowbridge testified that immediately following her injury, "[she] could not stand. [She] couldn't sit. There was nothing [she] could do." And when Strowbridge was asked how long this period of incapacity lasted, she replied, "three weeks to a month." Strowbridge also admitted that she did not look for a job until after her doctor released her to work on August 5. Based on Strowbridge's testimony, the unemployment-law judge found that Strowbridge was unavailable for suitable employment because she was not "ready, willing, and able to accept suitable employment" as required by Minnesota Statutes section 268.085, subdivision 15(a).

Because substantial evidence in the record shows that Strowbridge was not available for suitable employment from July 7 to August 4, we affirm the unemployment-law judge's determination that Strowbridge was ineligible for benefits during that period.

***Benefits Eligibility from August 5 Onward***

The unemployment-law judge also found that Strowbridge was not eligible for benefits from July 7 to November 8, 2013, because even though she was available to work after August 5, she was not actively seeking employment during that period of time. Strowbridge contends, and we agree, that she was actively seeking employment from August 5 to the date of the hearing.

In determining that Strowbridge was not actively seeking employment, the unemployment-law judge implicitly indicated that Strowbridge's testimony regarding her employment search was not credible:

> Strowbridge testified that she has applied for three or four jobs each week since the date of her injury; however, Strowbridge could only name five employers with which she had applied. Three of the positions for which Strowbridge applied would require Strowbridge to perform work outside of her restrictions.

Credibility determinations are within the exclusive province of the unemployment-law judge, and we will not disturb those findings on appeal. *Skarhus v. Davanni's Inc*., 721 N.W.2d 340, 345 (Minn. App. 2006). But when an unemployment-law judge makes a credibility determination regarding a witness whose credibility "has a significant effect on the outcome of a decision," the unemployment-law judge is required to "set out the

6

reason for crediting or discrediting that testimony." 2014 Minn. Laws, ch. 251, art. 2, §§ 15, at 862; 24(b), at 870 (to be codified at Minn. Stat. § 268.105, subd. 1a(a) (2014)).

Here, Strowbridge's testimony had a significant effect on the outcome of her case because she was the only witness to testify. The unemployment-law judge may have *implicitly* found that Strowbridge's testimony was not credible when the judge stated, "Strowbridge could only name five employers with which she had applied." But when a witness's credibility has a significant effect on the outcome of a case, the statute requires an unemployment-law judge to *explicitly* set out the reasons for crediting or discrediting the witness's testimony. *See id.* Accordingly, we review the record to determine if substantial evidence supports the unemployment-law judge's decision that Strowbridge was not actively seeking suitable employment after August 5.

An applicant actively seeking employment is required to put forth the reasonable and diligent efforts as someone in their similar circumstance would do. Minn. Stat. § 268.085, subd. 16(a). Whether an applicant is actively seeking suitable employment is a factual determination. *See McNeilly*, 778 N.W.2d at 711–12. Evidence in the record must substantially support the unemployment-law judge's factual determination. 2014 Minn. Laws ch. 271, art. 1, § 1 (to be codified at Minn. Stat. § 268.105, subd. 7(d)(5)).

No bright-line rule exists to clarify what "actively seeking suitable employment" requires, and most Minnesota caselaw focuses on what does not meet the requirement. *See Monson v. Minn. Dep't of Emp't Servs.*, 262 N.W.2d 171, 172 (Minn. 1978) (holding that a person who applied to two or three jobs over a two-month period was not actively seeking suitable employment); *McNeilly*, 778 N.W.2d at 712 (holding that asking around

7

for work and not applying for any positions does not satisfy the "actively seeking suitable employment" requirement); *James v. Comm'r of Econ. Sec.*, 354 N.W.2d 840, 841-42, 844 (Minn. App. 1984), *review denied* (Minn. Dec. 20, 1984) (holding that a person who made four job contacts in three weeks, all over the telephone, and visited a job-service office twice was not actively seeking suitable employment).

In contrast, a person who made multiple telephone calls and in-person networking contacts with five prospective employers, formally interviewed with one employer, and attempted to become self-employed over an 11-week period was considered to be actively seeking employment. *Decker v. City Pages, Inc*., 540 N.W.2d 544, 549-50 (Minn. App. 1995), *superseded by rule on other grounds as recognized by Mueller v. Comm'r of Econ. Sec*., 633 N.W.2d 91, 93 (Minn. App. 2001).

Here, the record shows that Strowbridge suffered a debilitating back injury that left her incapacitated for close to a month. When she finished physical therapy and her doctor cleared her to work, she visited a Minnesota Workforce Center, applied to at least 3 to 4 jobs per week, and spent 6 to 12 hours per week driving around in her car and soliciting employers in person.

And while Strowbridge did not search for a job online, she did not have Internet access at home. Moreover, applying in-person may well have been beneficial for the type of work that Strowbridge sought. *See James*, 354 N.W.2d at 842 ("With respect to the type of work that the claimant was seeking, the Department has long maintained that the most effective way to obtain gainful employment is by in-person job contacts, and not by telephone contacts.").

8

Based on Strowbridge's job-search efforts, the unemployment-law judge's determination that Strowbridge was not actively seeking suitable employment is unsupported by substantial evidence in the record. *See* 2014 Minn. Laws ch. 271, art. 1, § 1 (to be codified at Minn. Stat. § 268.105, subd. 7(d)(5)) (allowing this court to reverse an unemployment-law judge's decision when it is unsupported by substantial evidence in the record).

In sum, because Strowbridge was unavailable for suitable employment from July 7 to August 4, we affirm the unemployment-law judge's determination that Strowbridge was ineligible for unemployment benefits during that time period. Because substantial evidence does not support the unemployment-law judge's finding that Strowbridge was not actively seeking suitable employment from August 5 onward, we reverse the determination that Strowbridge was not entitled to unemployment benefits after August 5.

**Affirmed in part and reversed in part.**