**DEL DEE FOODS, INC., Relator,**

v.

**Robert M. MILLER, Commissioner of Jobs & Training, Respondents.**

**No. C2-86-417.**

Court of Appeals of Minnesota.

July 22, 1986.

---

John W. Riches, II, Appleton, for relator.

Robert M. Miller, Appleton, Pro Se.

Hubert H. Humphrey, III, State Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs & Training.

Considered and decided by POPOVICH, C.J., and FOLEY and FORSBERG, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

The employer seeks review of a determination by the Commissioner's representative that the respondent-employee did not engage in misconduct when he failed on one occasion to appear at work as promised. We reverse and remand for the introduction of additional evidence.

### FACTS

Robert Miller was hired as a laborer by Del Dee Foods in November 1981. He generally worked five or six shifts each week, and often worked overtime. In June 1984 he was suspended for two weeks when he admitted that he had drunk three glasses of whiskey before coming to work.

On September 8, 1985, Miller volunteered to work an extra shift the following day, starting at 6:00 a.m. Ordinarily, this would have been Miller's day off, since he had already worked six shifts that week. Extra volunteers were recruited for that day because Del Dee wanted to begin preparations for a test run of a new product. The test run was an important step in the process of obtaining a new contract.

When Miller did not appear at 6:00 the next morning as he had promised, a co-worker called him at home. Miller explained that he had stayed up late on the previous evening watching television, but would come in later, after he got more sleep.

Miller never arrived at work that day and did not call to explain his absence. At around noon, he went downtown for some drinks and was observed by Del Dee's owner in an apparently intoxicated condition. Miller was discharged two days later when he showed up for his regularly-scheduled shift.

## ISSUE

Was Miller discharged for misconduct and therefore disqualified from receiving unemployment compensation benefits?

## ANALYSIS

■ The referee and the Commissioner's representative both concluded that Miller's failure to report for work was not misconduct, due to the isolated nature of the incident. Del Dee argues that even a single unexcused absence may constitute misconduct.

Upon several occasions, the Minnesota appellate courts have held that a single absence from work may constitute misconduct when an employee has not actually received permission to be absent. For example, in *Colburn v. Pine Portage Madden Brothers, Inc.*, 346 N.W.2d 159 (Minn. 1984), where a waitress was told that she could leave early one evening after serving all of the guests, but left after serving only the soup course, the court found that her actions constituted misconduct.

In *Fresonke v. St. Mary's Hospital*, 363 N.W.2d 328 (Minn.Ct.App.1985), an employee was given a medical leave of absence, but was ordered by his employer to return to work on a particular date. The employee did not return as directed because he believed he was still under doctor's orders not to work. On the date he should have returned, he told a personnel representative that he was still having medical problems. Although the personnel representative referred him to his supervisor, the employee did not contact him. Three days later after hearing nothing from him, the employer terminated his employment. This court found that the employee had engaged in misconduct, reasoning:

> Although the act of failure to return to work was an isolated incident, it was in deliberate and direct contravention of the employer's directive to return to work and the failure of Fresonke to seek additional medical leave demonstrated a lack

of concern by the employee for retaining his job.

*Id.* at 330.

This court in *Psihos v. R & M Manufacturing*, 352 N.W.2d 849 (Minn.Ct.App. 1984), also upheld a finding of misconduct where an employee asked another employee, who also on occasion served in a supervisory capacity, if he could get someone else to fill in for him because he would be going home at lunch that day (in the middle of his shift). The other employee told him, "suit yourself," and Psihos left, passing by the nightshift supervisor without informing him that he was leaving. This court concluded that because the employee had left work following his "announced" departure without having received clear permission from anyone in authority, his actions could be interpreted as misconduct.

*Little v. Larson Bus Service*, 352 N.W.2d 813 (Minn.Ct.App.1984), involved a situation where a bus driver took a week off to attend a ministerial conference, even though his employer had denied his request to take the time off. This court found that the unexcused absence constituted misconduct, stating:

> Failure to report to work is misconduct within the meaning of the Employment Services Law * * *. The employer has a right to expect an employee to work when scheduled * * *.

*Id.* at 815 (citations omitted).[1] Similarly strong language is found in *Winkler v. Park Refuse Service, Inc.*, 361 N.W.2d 120 (Minn.Ct.App.1985):

> An employer can * * * reasonably expect an employee to keep it apprised of his whereabouts. Without this information, an employer cannot adequately plan its staffing needs.

*Id.* at 123.

In *Blau v. Masters Restaurant Associates, Inc.*, 345 N.W.2d 791 (Minn.Ct.App. 1984), where an employee had left early several times, lied, and refused to discuss

---

**1.** In *Little v. Larson Bus Service*, 352 N.W.2d 813, 815 (Minn.Ct.App.1984), this court refused to apply the "isolated hotheaded incident" rule which does not involve a deliberate, rational decision not to report to work.

his actions with his employer, the court specifically stated:

> Even a single incident can be misconduct if it represents a sufficient enough disregard for the employer's expectations.

*Id.* at 794. The court cited *Auger v. Gillette Company*, 303 N.W.2d 255, 257–58 (Minn.1981), where a single instance of sleeping on the job was found to constitute misconduct.

The courts in two instances have refused to find misconduct where employees were absent without excuse. In *Sticha v. McDonald's No. 291*, 346 N.W.2d 138 (Minn. 1984), a long-term employee requested a Friday off for her grandfather's funeral. When the employer discovered that the funeral was on Saturday, the employee was discharged. Her explanation was that the wake was on Friday, and she considered the wake to be a part of the funeral. The court reversed the Commissioner's representative's determination that the employee had engaged in misconduct, finding that "the employee's conduct evinced a good-faith error in judgment in an isolated instance during her 10 years of employment and did not adversely affect the employer's business." *Id.* at 140.

In *Neihart v. Hayes Contractors, Inc.,* 357 N.W.2d 130 (Minn.Ct.App.1984), an employee was discharged for taking a single two-and-one-half-hour lunch with a union representative without permission from his employer. The court refused to find misconduct, noting that the employer knew where the employee was and that the absence was not "relatively long-term" "without any explanation or notice". *Id.* at 131.

The above cases indicate that except in certain limited circumstances, an employee engages in misconduct if he is absent even once without notifying his employer. Although the Commissioner's representative here determined that Miller did not engage in misconduct, such determination is one of law; thus, this court need not defer to the Commissioner's decision. *McKee v. Cub Foods, Inc.,* 380 N.W.2d 233, 236 (Minn.Ct. App.1986); *Talberg v. Commissioner of Economic Security,* 370 N.W.2d 686, 688 (Minn.Ct.App.1985).

■ Because we reverse the Commissioner's decision based upon the above analysis, we need not address Del Dee's additional claim that the last straw doctrine should be applied. *See Flahave v. Lang Meat Packing,* 343 N.W.2d 683 (Minn.Ct. App.1984). However, we believe the ramifications of our reversal necessitate consideration of the issue whether Miller was discharged due to chemical dependency and whether he had made reasonable efforts to retain his employment. Minn.Stat. § 268.-09, subd. 1(2) (1984) provides in part:

> An individual shall not be disqualified * * * under any of the following conditions:
>
> *   *   *   *   *   *
>
> (b) The individual is separated from employment due to his own serious illness provided that such individual has made reasonable efforts to retain his employment;
>
> An individual who is separated from his employment due to his illness of chemical dependency which has been professionally diagnosed or for which he has voluntarily submitted to treatment and who fails to make consistent efforts to maintain the treatment he knows or has been professionally advised is necessary to control that illness has not made reasonable efforts to retain his employment.

This issue was raised by the referee in her decision but was not decided, although several findings do refer to Miller's drinking. The Commissioner's representative also found that Miller was discharged in part for going out drinking instead of reporting to work, but also did not address the above statutory exception to misconduct. It has previously been unnecessary to resolve this issue because both the referee and the Commissioner's representative determined that Miller's actions did not constitute misconduct in the first place.

The issue of chemical dependency was not sufficiently probed at the hearing before the referee, and we therefore remand

for the taking of additional evidence on this issue.

### DECISION

Reversed and remanded.