*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0230**

Mark M. Lazo,
Relator,

vs.

Moguls F & B LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed October 27, 2014
Affirmed
Kirk, Judge**

Department of Employment and Economic Development
File No. 31782220-3

Mark M. Lazo, St. Louis Park, Minnesota (pro se relator)

Moguls F & B LLC, Duluth, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Kirk, Presiding Judge; Hudson, Judge; and Stoneburner, Judge.\*

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KIRK**, Judge

Relator Mark M. Lazo challenges an unemployment-law judge's (ULJ) determination that he is ineligible for unemployment benefits because he was discharged for employment misconduct after he failed to report to work on two occasions. We affirm.

## DECISION

This court reviews a ULJ's decision to determine whether a party's substantial rights were prejudiced because the findings, inferences, conclusion or decision are unsupported by substantial evidence in view of the record as a whole or affected by an error of law. 2014 Minn. Laws ch. 271, art. 1, § 1 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)). Substantial evidence means "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002).

Whether Lazo engaged in conduct that disqualifies him from unemployment benefits is a mixed question of fact and law. *See Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether a particular act constitutes employment misconduct is a question of law, which this court reviews de novo. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). But whether the employee committed the particular act is a question of fact. *Id.* This court reviews the ULJ's

factual findings "in the light most favorable to the decision" and defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

An employee who is discharged from employment for misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2012). As a general rule, an employee's refusal to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct. *Schmidgall*, 644 N.W.2d at 804. "Minnesota law allows an employer to establish and enforce reasonable rules governing employee absences." *Cunningham v. Wal-Mart Assocs.*, 809 N.W.2d 231, 235 (Minn. App. 2011).

This court "accords deference to a ULJ's decision not to hold an additional hearing and will reverse that decision only for an abuse of discretion." *Skarhus*, 721 N.W.2d at 345. When deciding a request for reconsideration, the ULJ "must not . . . consider any evidence that was not submitted at the evidentiary hearing," but must order an additional evidentiary hearing to consider new evidence if it "would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence." 2014 Minn. Laws ch. 251, art. 2, § 16 (to be codified at Minn. Stat. § 268.105, subd. 2(c) (2014)).

3

Lazo was employed as the food and beverage manager at respondent Moguls F & B LLC, doing business as Moguls Grille & Tap Room in Lutsen, until he was discharged on October 24, 2013, after he failed to report to work on October 14 and 15. After Lazo applied for unemployment benefits, a Minnesota Department of Employment and Economic Development (DEED) clerk determined that he was ineligible for benefits because he was discharged for employment misconduct.

At a telephonic evidentiary hearing, Lazo argued that his failure to report to work did not constitute employment misconduct because he was not scheduled to work on Monday, October 14, and that he notified his employer by text message that he would be absent from work on October 15. The ULJ upheld DEED's ineligibility determination, finding that Lazo was discharged for misconduct for failing to report to work on October 14 and 15. The ULJ found that Lazo credibly testified that he would normally report to work on Mondays in order to complete the food and beverage orders even if it was not listed on his work schedule. The ULJ also credited Lazo's testimony that he waited three hours into his work shift on October 15 before notifying his employer that he was taking the day off.

Lazo filed a request for reconsideration and submitted a copy of his monthly work schedule documenting that he was not scheduled to work on October 14. The ULJ affirmed her decision, finding that a copy of Lazo's work schedule was irrelevant to her decision because Lazo had credibly testified that he would report to work on Mondays regardless of whether it was noted on his work schedule. The ULJ also concluded that the failure of Lazo's employer to respond to Lazo's text message on October 15

4

informing him of his absence from work did not mean that his employer was indifferent to Lazo's work attendance. The ULJ noted that Lazo had previously received a final written warning from his employer regarding other absences from work and was on notice that future issues with attendance, specifically failing to call or come into work, would lead to his discharge from employment.

On certiorari appeal, Lazo argues that his actions do not constitute employment misconduct because: (1) he was not scheduled to work on Monday, October 14; (2) his work schedule was merely a guideline, and he planned to make up his absence from work on October 15 by working on October 17; and (3) his failure to report to work on October 14 and 15 did not constitute a pattern of unexcused absences, and he was unfairly discharged without warning.

There is substantial evidence in the record to support the ULJ's findings that Lazo committed employment misconduct when he failed to appear for work on October 14 and 15. The record establishes that Moguls has an absenteeism and tardiness policy that Lazo was aware of and expected to follow. Lazo had previously received a final warning notice from Moguls in November 2012 that outlined the procedures he must follow in completing his work schedule and reporting to work. The warning stated that Lazo must fill in the dates and times of his work shifts in his work schedule and submit the work schedule to his employer for approval. Lazo was also required to immediately notify his employer if he would be late or unable to come to work.

The ULJ found Lazo's testimony about some events to be self-serving and inconsistent. The ULJ did not find Lazo's testimony that he was not scheduled to work

5

on Monday, October 14, to be credible in light of his testimony that he would normally report for work on Mondays even if it wasn't noted on his written schedule. *See* Minn. Stat. § 268.031, subd. 1 (2012) ("All issues of fact under the Minnesota Unemployment Insurance Law are determined by a preponderance of the evidence."). In making factual findings, this court defers to the ULJ's credibility determinations. *Skarhus*, 721 N.W.2d at 344.

Lazo failed to notify his employer of his absence on October 15 until three hours after the work shift was scheduled to start. "[E]xcept in certain limited circumstances, an employee engages in misconduct if he is absent even once without notifying his employer." *Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 418 (Minn. App. 1986). Lazo's argument that his employer was indifferent to his absence on October 15 because he did not respond to Lazo's text message is without merit because notifying an employer of an absence does not equate to receiving permission for that absence. *See Psihos v. R & M Mfg.*, 352 N.W.2d 849, 850 (Minn. App. 1984) (concluding that employee who "announced his departure [from work] and left without permission" committed employment misconduct because he did not request or receive permission to leave work). Here, Lazo was required to report to work on October 15 and notify his employer in advance of any absence, which he failed to do. Thus, the ULJ did not err in finding that Lazo committed employment misconduct when he failed to report to work on October 15.

Finally, Lazo argues that his absences on October 14 and 15 do not constitute a pattern of unexcused absences and that he was unfairly discharged without warning. The ULJ noted that Lazo had been previously disciplined for the same type of offense by his

6

employer and that he was aware that he needed to call Moguls in advance of any absence or inability to report to work. A pattern of absenteeism can constitute employment misconduct because it demonstrates a lack of concern by the employee for the job. *Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App. 1985). Here, the record shows that Lazo failed to follow Mogul's notification policy on at least eight previous occasions. Such a record demonstrates a serious violation of the standards of behavior that an employer has the right to reasonably expect. *See Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 317 (Minn. 2011) (holding that relator was discharged for excessive absenteeism and tardiness when he failed to follow employer's tardiness policy on at least five occasions). We conclude that there is substantial evidence to support the ULJ's findings.

**Affirmed**.