*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1585**

Cecilia Shaw,
Relator,

vs.

First Advantage Background Services,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed May 23, 2016
Affirmed
Reilly, Judge**

Department of Employment and Economic Development
File No. 337701163-3

Cecilia Shaw, Elk River, Minnesota (pro se relator)

First Advantage Background Services, Tampa, Florida (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Stauber, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Relator argues the unemployment-law judge (ULJ) erred when it determined she was ineligible to receive unemployment benefits because the decision was not supported by substantial evidence. Because relator's uncontradicted testimony provided substantial evidence to support the ULJ's decision, we affirm.

## FACTS

Relator Cecilia Shaw worked for First Advantage Background Services (FABS) as a software support analyst. In summer 2014 she was authorized to work from home; however, the arrangement changed in January 2015 when she was informed that she needed to work in the office from 8 a.m. to 5 p.m. Relator and FABS then agreed upon an arrangement where relator would work in the office Monday through Thursday and telecommute on Fridays. In February 2015, FABS warned relator that if her attendance and commitment to a regular work schedule did not improve she would be discharged from employment. According to her own testimony, relator continued to arrive at work as much as two hours late at least two days a week and left work early at least one day a week. Her reasons included dropping off and picking up her 17-year-old son from school, going to court, going to the doctor, doing repairs on her home, and staying home for the repair person. However, she testified that "90 percent of the reason[] why" she worked from home and arrived late was due to her desire to avoid traffic.

In April 2015, FABS again warned relator that if her attendance did not improve she would be terminated. She continued to arrive late, leave early, and work from home

2

on days when she was required to work in the office through June 2015. FABS discharged her from employment on June 30, 2015.

Relator applied for unemployment benefits and was determined to be ineligible because she "was discharged for attendance and schedule consistency" issues, and admitted that she was "warned multiple times" that she needed to improve her attendance. Relator appealed the determination and an evidentiary hearing was held. Relator was the sole participant at the hearing. The ULJ concluded that relator's

> conduct and actions in continuing to be tardy to work and leave work early, after being warned about the need for her to maintain a regular in-office work schedule, displayed clearly a serious disregard of [FABS's] interest and of standards of behavior they had a right to expect of [relator] as an employee so as to constitute employment misconduct.

The ULJ determined that relator was ineligible to receive unemployment benefits. Relator filed a request for reconsideration, and the ULJ affirmed its decision. This certiorari appeal follows.

## D E C I S I O N

Relator argues the ULJ erred as a matter of law because its determination that she committed disqualifying misconduct was based solely on relator's testimony and is not supported by any substantial evidence. We review a ULJ's order to determine whether it is "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015).

3

Relator argues that the ULJ erred as a matter of law because the decision was based solely on relator's testimony and she was "clearly participating in the hearing under severe emotional and physical distress," which we construe as an argument that the decision was made "upon unlawful procedure." Minn. Stat. § 268.105, subd. 7(d)(3). Relator appears to assume that FABS was required to participate in the hearing. However:

> An application for unemployment benefits is not considered a claim against an employer but is considered a request for unemployment benefits from the trust fund. The commissioner has the responsibility for the proper payment of unemployment benefits regardless of the level of interest or participation by an applicant or an employer in any determination or appeal. An applicant's entitlement to unemployment benefits must be determined based upon that information available without regard to a burden of proof.

Minn. Stat. § 268.069, subd. 2 (2014).

Thus, the ULJ was required to make a determination based on the information available to it, regardless of FABS's failure to participate in the hearing. *See Haugen v. Superior Dev., Inc.*, 819 N.W.2d 715, 722 (Minn. App. 2012) ("[T]he statute is not meant to benefit employers specifically. Although employers fund the unemployment insurance program . . . an employer does not pay unemployment benefits directly and a former employee's application for benefits is not a claim against an employer.") (citing Minn. Stat. § 268.069, subd. 2 (2010)). There is no requirement that an employer participate in the hearing. And although relator asserts she was "clearly" participating in the hearing under severe emotional and physical distress, she provides no support for this assertion. Our independent review of the hearing does not reveal indicia that relator was under distress such that we can conclude that the procedure was unlawful.

Relator also argues the ULJ's decision was "not supported by any substantial evidence." Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros., Inc.*, 346 N.W.2d 159, 161 (Minn. 1984). We review findings of fact in the light most favorable to the ULJ's decision. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). The ULJ's determination was based on relator's uncontradicted testimony. We note that relator does not allege the factual findings misconstrue her uncontradicted testimony.

Whether a particular act constitutes disqualifying misconduct is a question of law, which this court reviews de novo. *Ress v. Abbott Northwestern Hosp., Inc.*, 448 N.W.2d 519, 523 (Minn. 1989). Employment misconduct is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or . . . a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014).

Despite two warnings that her employment was in jeopardy due to her absenteeism, relator continued to show up to work late, leave early, and work from home on days she was required to work in the office. An "employer has a right to expect an employee to work when scheduled." *Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 417-18 (Minn. App. 1986). An employer also has a right to "establish and enforce reasonable work rules relating to absenteeism." *Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App. 1985). "[R]efusing to abide by an employer's reasonable policies and requests amounts to

5

disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). We conclude there is substantial evidence to support the ULJ's determination that relator was ineligible to receive unemployment benefits because she was terminated for misconduct.

**Affirmed.**