*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-2020

Katie Kissner,
Relator,

vs.

Restore 24, LLC,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 15, 2016**
**Affirmed**
**Smith, Tracy M., Judge**

Department of Employment and Economic Development
File No. 33802414-2

Katie R. Kissner, St. Cloud, Minnesota (pro se relator)

Restore 24, LLC, Sauk Rapids, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Smith, Tracy M., Judge.

UNPUBLISHED OPINION

**SMITH, TRACY M.**, Judge

Relator Katie Kissner challenges an unemployment-law judge's (ULJ) determination that she was discharged due to employment misconduct and that she is therefore ineligible for unemployment benefits. Because we defer to the ULJ's credibility determinations and the ULJ did not err by not obtaining testimony from someone Kissner identified as a potential witness, we affirm.

## FACTS

Kissner began working as a cleaning technician at respondent Restore 24, LLC in June 2013. She was quickly promoted to cleaning manager. But following Restore 24's restructuring of job duties in March 2015, Kissner was demoted to cleaning technician.

Restore 24 employees generally report to Restore 24's office and carpool to each day's jobsite. On July 15, 2015, Kissner had been approved to report directly to her jobsite as long as she agreed to check in with her supervisor to make sure that the schedule had not changed. Due to a schedule change caused by a sick employee, Kissner's supervisor attempted to contact Kissner to tell her to report to Restore 24's office and carpool to a different jobsite. When Kissner did not arrive at Restore 24 on time, the other employees left without her. Kissner reported to the office a few minutes later and was sent home.

Later that day, Restore 24's CEO, John Mondloch, thrice attempted to contact Kissner. He left a voicemail on his third call. According to Mondloch and Restore 24's office manager, Sherri Jenkins, who overheard Mondloch leaving the voicemail,

Mondloch asked Kissner to call him back by 4:00 p.m. to discuss the day's events. They denied that Mondloch made any reference to firing Kissner. But according to Kissner, Mondloch stated that if Kissner failed to return the call by 4:00 p.m., she would be fired. Kissner's boyfriend stated that he heard the voicemail and agreed with Kissner's description of it. Kissner did not receive Mondloch's voicemail until 5:30 or 6:00 p.m. and did not return Mondloch's call because she "took [Mondloch's voicemail] as [her] termination."

Kissner did not report to work as scheduled on July 16, 17, and 20. Restore 24 sent a letter to Kissner on July 21, explaining its company policy that three consecutive absences are considered a voluntary resignation. Because Kissner had missed three consecutive days of work, Restore 24 accepted Kissner's voluntary resignation from employment.

Following a hearing, a ULJ determined that Kissner had been discharged for employment misconduct and was therefore ineligible for unemployment benefits because the preponderance of the evidence showed that Kissner was discharged by letter on July 21 after failing to show up to work for three days. In making this determination, the ULJ found that Mondloch's testimony about the July 15 voicemail was more credible because Jenkins overheard Mondloch leaving the voicemail, Kissner's boyfriend's credibility was undermined by his relationship with Kissner, and Kissner demonstrated conduct at the hearing consistent with Mondloch's testimony that "Kissner sometimes hears what she wants to hear."

3

Kissner timely filed a request for reconsideration on two grounds. First, Kissner argued that Restore 24 provided false evidence at the hearing about prior oral and written warnings given to Kissner about her job performance. The ULJ rejected this argument because Kissner had not shown that the evidence the ULJ relied upon to make his employment-misconduct determination was likely false. Kissner had challenged the job-performance evidence at the hearing, arguing that she had not received the warnings and that Restore 24's documents were therefore "falsified." But Restore 24 did not assert at the hearing that Kissner had received the warnings, and the ULJ quickly determined that the documents were "created to memorialize what happened" in advance of the hearing. Second, Kissner argued that she was denied the opportunity to question someone she had identified as a potential witness. The ULJ rejected this argument because Kissner had agreed at the hearing that it was not necessary to call this witness. The ULJ affirmed his ineligibility determination on reconsideration.

Kissner appeals.

## D E C I S I O N

Kissner challenges the ULJ's determination that she was discharged due to employment misconduct. An employee is ineligible for unemployment benefits if she "was discharged because of employment misconduct." Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct is defined as "any intentional, negligent, or indifferent conduct . . . that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014).

4

We may reverse or modify a ULJ's decision if the relator's substantial rights have been prejudiced because the ULJ's findings, inferences, conclusion, or decision are unsupported by the record or affected by an error of law. Minn. Stat. § 268.105, subd. 7(d)(4)-(5) (Supp. 2015). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). Whether an employee committed a particular act is a question of fact, and whether that act constitutes employment misconduct is a question of law. *Id.* We view the ULJ's findings of fact in the light most favorable to the decision and give deference to the ULJ's credibility determinations. *Id.*

The ULJ determined that Kissner had been discharged for employment misconduct because Kissner was discharged by letter on July 21 after failing to show up to work for three days. Kissner argues that the ULJ erred because she was instead discharged in Mondloch's July 15 voicemail. But the ULJ found Mondloch's testimony regarding the voicemail to be more credible, and we defer to the ULJ's credibility determination. *See id.*

The essence of Kissner's argument is that the ULJ erred by finding Mondloch's testimony more credible than Kissner's. As at the hearing and on reconsideration, Kissner focuses on the documents that Restore 24 submitted regarding Kissner's job performance, and suggests that this "false documentation" proves that Mondloch was not credible. Kissner is correct that it is unlawful for an employer to knowingly make false representations to prevent an applicant from obtaining unemployment benefits. *See* Minn. Stat. § 268.184, subd. 2 (2014). But no one from Restore 24 testified that Kissner

5

had been provided with written warnings, and the ULJ agreed with Kissner that the job-performance documents were only prepared in anticipation of the hearing. Moreover, because the challenged documents did not discuss Mondloch's voicemail or Kissner's failure to report to work for three days, they were irrelevant to the ULJ's determination that Kissner committed employment misconduct by failing to show up to work. The challenged documents do not undermine the ULJ's finding that Mondloch's testimony about the voicemail was more credible than Kissner's.

Kissner also argues that the ULJ erred by finding that Kissner's boyfriend's credibility was undermined by his relationship with Kissner. "Credibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Skarhus*, 721 N.W.2d at 345. We decline to disturb the ULJ's credibility determinations regarding either Mondloch or Kissner's boyfriend.

Giving deference to the ULJ's credibility determinations, we conclude that the record supports the ULJ's finding that Kissner was fired in the July 21 letter after failing to report to work for three days, and not in the July 15 voicemail. An employer "has a right to expect an employee to work when scheduled," *Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 417 (Minn. App. 1986) (quotation omitted), and a "right to establish and enforce reasonable work rules relating to absenteeism," *Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App. 1985). By failing to report to work for three consecutive days, Kissner violated the standards of behavior that Restore 24 had a right to expect. *See* Minn. Stat. § 268.095, subd. 6(a)(1). The ULJ therefore did not err by concluding that Kissner was discharged for employment misconduct.

Finally, Kissner argues that the ULJ erred by not obtaining testimony at the hearing from someone she had identified as a potential witness. But Kissner agreed at the hearing that the ULJ did not need to call the witness. Moreover, the witness's testimony was irrelevant to the ULJ's decision. Kissner had intended to call the potential witness to discuss Restore 24's "blatant lie" that she had refused to perform one of her job duties. She did not assert that the witness had any information regarding the voicemail or Kissner's three-day failure to report to work. Because the ULJ's employment-misconduct determination was based on Kissner's failure to report to work—not on any alleged refusal to perform her job duties—the ULJ did not err by not obtaining the potential witness's testimony.

**Affirmed.**