*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0505**

Yitagesu Wolde,
Relator,

vs.

Minnesota Department of Veterans Affairs,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed December 19, 2016
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 33995514-4

Yitagesu Wolde, St. Paul, Minnesota (pro se relator)

Lori Swanson, Attorney General, St. Paul, Minnesota (attorney for respondent employer Minnesota Department of Veterans Affairs)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Bratvold, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Relator challenges an unemployment-law judge's (ULJ) decision that he is ineligible for unemployment benefits because he was discharged for the employment misconduct of failing to accept shifts and failing to show up for a shift. We affirm.

## FACTS

In March 2015, respondent-employer Minnesota Department of Veterans Affairs (MDVA) extended an offer of employment as an intermittent food service worker to relator Yitagesu Wolde. Intermittent was defined as "an employee who works an irregular and uncertain schedule which alternately begins, ceases and begins again as the needs of the agency require." Wolde was informed that his position required regular attendance, advanced notice for absence, flexibility, acceptance of work assignments as needed, and accurate completion of payroll time reports.

Wolde worked an average of 32 hours per week until May 18, 2015, when he was injured at work. Wolde received medical documentation that he could return to work unrestricted on July 24. Wolde returned to work on July 30. After Wolde returned to work, he declined offered shifts and he failed to show up for a shift on September 19 that he agreed to work. On September 25, 2015, MDVA discharged Wolde because he made himself available to work only half of the shifts that were offered to him.

At a hearing before a ULJ, MDVA submitted Wolde's time sheets that showed notations that he declined 6 offers to work in August, declined 12 offers to work in September, and failed to show on September 19. Wolde testified that he did not decline

offered shifts and worked when he agreed to work. Wolde asserted that he was not offered shifts after his injury because MDVA believed that he was no longer productive.

The ULJ found that Wolde's behavior of declining shifts for unknown reasons and failing to show up for a shift that he agreed to work amounted to employment misconduct making him ineligible for unemployment benefits. The ULJ found the employer's witnesses more credible than Wolde because their testimony was "direct, straightforward, and plausible." Wolde requested reconsideration, challenging several of the ULJ's factual findings. The ULJ affirmed the decision. Wolde petitioned for a writ of certiorari.

## D E C I S I O N

We may affirm, modify, or reverse the decision of the ULJ or remand the case for further proceedings if the substantial rights of the relator may have been prejudiced because the findings, inferences, or decision are unsupported by substantial evidence in the record, or are arbitrary or capricious. Minn. Stat. § 268.105, subd. 7(d)(5)-(6) (Supp. 2015).

The ULJ found that Wolde was discharged for employment misconduct. Whether an employee committed misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). "Whether the employee committed a particular act is a question of fact." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But whether an employee's act constitutes disqualifying misconduct is a question of law, which we review de novo. *Schmidgall*, 644 N.W.2d at 804.

We view the ULJ's factual findings in the light most favorable to the decision and will not disturb them provided that substantial evidence sustains them. *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 882 (Minn. App. 2012). Substantial evidence is "(1) such

3

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 466 (Minn. 2002). "Credibility determinations are the exclusive province of the ULJ . . . ." *Skarhus*, 721 N.W.2d at 345.

The ULJ found that Wolde was discharged for the employment misconduct of failing to accept shifts and failing to show up for a shift he agreed to work. Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a)(1) (2014). An employee discharged for employment misconduct is ineligible to receive unemployment benefits. *Id.*, subd. 4(1) (2014).

"As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall*, 644 N.W.2d at 804. "This is particularly true when there are multiple violations of the same rule involving warnings or progressive discipline." *Id.* at 806-07. An employer also has a right to "establish and enforce reasonable work rules relating to absenteeism." *Jones v. Rosemount, Inc.*, 361 N.W.2d 118, 120 (Minn. App. 1985). Additionally, an "employer has a right to expect an employee to work when scheduled." *Del Dee Foods, Inc. v. Miller*, 390 N.W.2d 415, 417 (Minn. App. 1986) (quotation omitted). "[A] single absence from work may constitute misconduct when an employee has not actually received permission to be absent." *Id.*

4

At the hearing before the ULJ, a witness for MDVA testified that intermittent employees are "very necessary" to its operation and that, on average, an intermittent employee works 20 hours per week and is expected to respond to 60-70% of assignment offers. Wolde declined so many offers that MDVA determined that he was not meeting its needs and on August 20, 2015, put Wolde on notice that he needed to pick up more shifts. Wolde continued to decline shifts, but finally agreed to work on September 19 and signed a shift pick-up form. Wolde failed to show up on September 19 or call to report his absence.

Wolde's refusal to abide by MDVA's reasonable policy that he pick up shifts as an on-call employee is employment misconduct making Wolde ineligible for unemployment benefits. This is especially true when MDVA's representatives met with Wolde to discuss his unavailability and put him on notice that he was expected to pick up shifts. Moreover, MDVA had a right to expect Wolde to work on September 19, and this single absence constitutes misconduct.

Wolde argues that the ULJ "erred in finding that on August 20 . . . [Wolde] met with [his employer] to discuss . . . his worker's compensation and refused to work his shift." A witness for MDVA testified that there was a meeting with Wolde on August 20 to discuss how he was not meeting the employer's needs and he was put on notice that he was expected to pick up shifts. Wolde agreed that there was a meeting on August 20, but claimed that it was to discuss his injury. The ULJ found that Wolde was told on August 20 that he was expected to pick up additional shifts, but continued to decline shifts. The ULJ found MDVA's witness credible. We defer to the ULJ's credibility determinations. *See Skarhus*, 721 N.W.2d at 345.

5

Wolde also argues that the ULJ "erred in finding that [Wolde] willfully refused to work [on] August 20." But the only controversy regarding August 20 was the nature of the meeting. Wolde may be referring to September 19, when he failed to show for a shift he agreed to work. The record supports the ULJ's finding that Wolde did not work on September 19.

Wolde did not report working September 19 on his time sheet. Wolde claims that, although he generally self-reported hours on his time sheet, in this particular instance, his supervisor reported Wolde's hours and failed to include September 19. The ULJ did not find Wolde credible. Additionally, at the hearing when Wolde questioned MDVA's witness about his absence on September 19, he seemed to indicate that he should have received a warning for his absence rather than it being used as a basis to discharge him. Moreover, there is a document in the record entitled "Unemployment Insurance Request for Information" dated October 28, 2015. Respondent Department of Employment and Economic Development requested additional information from Wolde, including his employment end date. Wolde wrote "09/18/2015." If Wolde worked on September 19, he would not have indicated that his last date of employment was the previous day.

Wolde also argues that he did not make himself available for work because he was asked to work on his days off. But Wolde did not have a regular schedule or days off. He was an intermittent/on-call employee who was expected to pick up shifts that regular employees could not work. The record supports the ULJ's decision that Wolde was discharged for employment misconduct and is ineligible for unemployment benefits.

**Affirmed.**

6